UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA ex rel. DISHON MCNARY, | ) ) ) | |
|---|---|---|
| Petitioner, | ) ) | |
| vs. | ) ) | 10 C 5185 |
| MARCUS HARDY, Warden, Stateville Correctional Center, | ) ) ) ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This case comes before the Court on a petition for a writ of habeas corpus filed by Petitioner Dishon McNary ("McNary") pursuant to 28 U.S.C. § 2254. For the reasons stated below, the petition is denied.

### BACKGROUND

During the early morning hours of March 21, 1998, McNary was driving under the influence of alcohol when he hit and killed a pedestrian and two individuals in another motor vehicle. At approximately 1:50 a.m., Chicago Police Officer Jose Martinez ("Officer Martinez") saw McNary strike and kill the pedestrian and then subsequently strike another motor vehicle killing two other individuals. Chicago Police Officer Donald Branch also witnessed McNary's car crashing into the other motor vehicle. Shortly after the car accident, Chicago Police Officer Richard Hardesty

("Officer Hardesty") arrived on the scene and observed that McNary was semi-conscious and his breath smelled of alcohol. McNary was transported to Cook County Hospital by an ambulance.

At approximately 3:50 a.m., Officer Hardesty arrived at Cook County Hospital. A doctor in the emergency room gave Officer Hardesty permission to speak with McNary. Officer Hardesty observed that McNary was awake and lucid and lying on a gurney with an I.V. in his arm. Officer Hardesty introduced himself to McNary and informed McNary that he was investigating the accident. Officer Hardesty asked McNary if he had been drinking and McNary, minimizing the amount of alcohol consumed, said he had two beers and two shots. When questioned about how the accident occurred, McNary stated "I seen the man standing in the middle of the street, I beeped my horn, he did not move, I kept on going." Officer Hardesty placed McNary under arrest for driving under the influence of alcohol and read him the "Warning to Motorist" form. McNary was then administered blood and urine alcohol tests. McNary's blood alcohol level was .22 grams per deciliter.

On March 21, 1998 at approximately 8:00 a.m., Detective Theodore Ptak ("Detective Ptak") went to Cook County Hospital and received permission from the attending physician to speak with McNary. Detective Ptak advised McNary of his Miranda rights. According to Detective Ptak, McNary appeared to understand the questions asked, did not appear shocked or confused, and did not complain of any pain.

Among other things, McNary told Detective Ptak that he struck a pedestrian but did not stop because he knew he was drunk.

McNary was charged with aggravated reckless homicide and first degree murder. At trial, McNary testified that he had been drinking since approximately 1:00 p.m. the day before the accident. When asked whether he felt drunk, McNary testified "I was feeling high, but I was feeling though that I can drive." McNary acknowledged that he hit something while driving, but stated that he kept driving because he did not know what he hit. McNary testified that a suspicious car was following him, so that he ran several red lights when he collided with the other motor vehicle. McNary said he did not remember anything after the accident until he woke up in the hospital handcuffed to the bed.

At the jury instruction conference, McNary's counsel proposed a jury instruction on voluntary intoxication. The trial court found that McNary was not intoxicated to such an extent to deprive him of all reason and, therefore, the jury instruction on voluntary intoxication was not warranted. The trial court instructed the jury on aggravated reckless homicide as to all three victims and on first degree murder as to the two victims in the motor vehicle.

On May 27, 1999, a jury in the Circuit Court of Cook County, Illinois, found McNary guilty of two counts of first degree murder and one count of aggravated reckless homicide. McNary was sentenced to a mandatory term of natural life for the

two murder convictions and a concurrent ten-year sentence for the aggravated reckless homicide conviction. On September 28, 2001, the state appellate court affirmed. On May 1, 2002, the state supreme court denied McNary's petition for leave to appeal. On May 23, 2002, McNary filed a post-conviction petition in the Circuit Court of Cook County. On August 9, 2002, the trial court summarily dismissed the post-conviction petition, finding it frivolous, patently without merit, and untimely. Because McNary's petition was timely, the state appellate court reversed and remanded. On remand, McNary filed a supplemental post-conviction petition and, on October 31, 2006, the trial court granted the State's motion to dismiss both the original and supplemental post-conviction petitions. On December 23, 2009, the state appellate court affirmed and, on May 26, 2010, the state supreme court denied McNary's petition for leave to appeal. On March 11, 2011, McNary filed an amended petition for a writ of habeas corpus, which is presently before this Court. On April 15, 2011, Marcus Hardy, the Warden at Stateville Correctional Center, ("Hardy") filed an answer to McNary's petition.

**LEGAL STANDARD**

A district court may entertain an application for a writ of habeas corpus on behalf of a state prisoner who is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A court may award habeas relief if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or

"was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established federal law if it applies a rule that contradicts the governing law or it arrives at a result different from a Supreme Court case with materially indistinguishable facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). The state court's decision constitutes an unreasonable application of clearly established federal law if the state court applied the governing law in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. 685, 699 (2002) (explaining that "it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied [the governing law] incorrectly"). In evaluating a habeas petition, the court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner, however, can rebut the presumption with clear and convincing evidence. *Id.*

## DISCUSSION

McNary asserts four claims in his habeas petition: (1) ineffective assistance of trial counsel; (2) McNary's involuntary statements to Detective Ptak were improperly admitted at trial; (3) ineffective assistance of appellate counsel; and (4) the natural life sentencing statute, as applied, violates the Eighth Amendment.[1]

---

[1] As a preliminary matter, this Court denies McNary's request for an evidentiary hearing because McNary does not satisfy the standard in Section 2254(e)(2).

## I. Ineffective Assistance of Trial Counsel

McNary claims his trial counsel rendered ineffective assistance because he failed to present certain evidence at a suppression hearing. McNary argues that the testimony of several witnesses would have shown that his statements to Officer Hardesty were inadmissible because he was in custody at the time and not given Miranda warnings. According to McNary, trial counsel failed to present three witnesses, including McNary, McNary's sister, and Officer Martinez, who would have demonstrated that McNary was in custody at the time he was questioned by Officer Hardesty.

To prevail on a claim for ineffective assistance of counsel, the petitioner must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness under the circumstances and (2) the deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984). To establish prejudice, the petitioner must prove that there is a reasonable probability that the proceeding would have had a different result but for the unprofessional errors. *Id.* at 694. When evaluating counsel's performance, the court is highly deferential to counsel's judgments. *Id.* at 689-91. Failure to raise a meritless argument does not constitute ineffective assistance of counsel. *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

Applying the *Strickland* test, the state appellate court found that McNary could not establish that counsel's failure to call the three witnesses resulted in prejudice.

First, the state court noted that McNary did, in fact, testify at the suppression hearing. McNary testified that he did not remember anything from the time he ran a red light the night of the accident until 10:00 a.m. the next morning when he woke up in the hospital. McNary also testified that he did not remember meeting Officer Hardesty. Based on McNary's testimony, the state court found that trial counsel reasonably did not ask McNary whether he believed he was free to leave when Officer Hardesty questioned him. Second, the state court found that counsel acted reasonably in failing to call McNary's sister as a witness because counsel had no knowledge of McNary's sister's testimony, that she saw McNary handcuffed to the bed, until after the trial court had ruled on the motion to suppress. The state court concluded that the sister's testimony, in light of the overwhelming evidence that McNary was not in custody, would have had minimal impact on the outcome of the suppression hearing. Finally, the state court, relying on *Stansbury v. California*, found that counsel was not ineffective for failing to call Officer Martinez to testify at the hearing because Officer Martinez's subjective view, that he placed McNary in custody at the scene of the accident, was irrelevant to the custody determination. *Stansbury v. California*, 511 U.S. 318, 323 (1994) ("Our decisions make clear that the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."). For these reasons, the state

court held that McNary was not denied effective assistance of counsel when counsel failed to call the three witnesses at the suppression hearing.

For habeas relief, McNary must prove that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.[2] 28 U.S.C. § 2254(d)(1). The state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law or it arrives at a result different from a Supreme Court case with materially indistinguishable facts. *Price*, 538 U.S. at 640. Here, the state court applied the correct governing standard, the *Strickland* test, and McNary cites no Supreme Court case with materially indistinguishable facts and a different result from his case. Thus, the state court's decision is not contrary to clearly established federal law. Alternatively, the state court's decision constitutes an unreasonable application of clearly established law if the state court applied *Strickland* in an objectively unreasonable manner. *Bell*, 535 U.S. at 699. This Court only determines whether the state court applied *Strickland* in an objectively unreasonable manner and does not evaluate counsel's performance *de novo*. *See id.* McNary, arguing that his counsel was ineffective under *Strickland*, fails to satisfy the standard for habeas relief which requires McNary to demonstrate that the state court's application of *Strickland* was objectively

---

[2] McNary's claim cannot be based on Section 2254(d)(2), that the state court unreasonably determined the facts in light of the evidence presented, because McNary's claim is based on counsel's failure to present all of the evidence.

unreasonable. Based on the state court's reasoning described above, this Court cannot conclude that its application of *Strickland* was objectively unreasonable. Accordingly, this Court denies McNary habeas relief based on trial counsel's ineffective assistance.

## II.   Voluntariness of McNary's Statement to Detective Ptak

McNary claims that the trial court improperly admitted an involuntary statement he made to Detective Ptak at the hospital.[3]  Specifically, McNary asserts that his statement was involuntary because of his physical, medical, and mental condition.

In evaluating the voluntariness of a confession, a court must consider the totality of the circumstances. *Connor v. McBride*, 375 F.3d 643, 651 (7th Cir. 2004) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). A confession is involuntary only if circumstances demonstrate that police coercion or overreaching overbore the accused's will and caused the confession. *Connor*, 375 F.3d at 651 (citing *Dickerson v. United States*, 530 U.S. 428, 434 (2000)). Courts have considered many factors, including the youth of the accused, lack of education, low intelligence, lack of any advice to the accused of his constitutional rights, the length of the detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep. *Schneckloth*, 412 U.S. at 226. Courts also

---

[3] McNary's claim is limited to his statement to Detective Ptak because McNary procedurally defaulted any claim relating to the voluntariness of his statement to Officer Hardesty by failing to raise the issue in his direct appeal. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (explaining that a claim is procedurally defaulted when the habeas petitioner failed to present the claim to the state courts and the opportunity to raise the claim in state court has passed).

consider the accused's physical condition at the time of the questioning. *Mincey v. Arizona*, 437 U.S. 385, 400-01 (1978). Even if the state court's ruling was incorrect, the decision is constitutional as long as it was reasonable (i.e., within the boundaries of permissible differences of legal opinion). *Connor*, 375 F.3d at 651.

The state appellate court evaluated the totality of the circumstances surrounding McNary's statement to Detective Ptak. The state court noted that a doctor allowed Detective Ptak to interview McNary at 8:00 a.m. on the morning of the accident and again a few hours later. McNary appeared to understand the questions asked and did not appear shocked or confused. Although McNary had a broken arm, a damaged knee, and an I.V. in his arm, he did not complain of any pain. The state court explained that McNary was not subjected to lengthy interrogations, not physically abused or threatened, not promised anything for his confession, and did not testify that his will was overborne. Based on the totality of the circumstances, the state court concluded that McNary's statement was voluntary even though McNary had received pain medication.

McNary argues that the state court decision was contrary to clearly established federal law because the court reached a different conclusion from the Supreme Court in the indistinguishable cases of *Mincey*, 437 U.S. 385 and *Beecher v. Alabama*, 408 U.S. 234 (1972). The state court found that *Mincey* and *Beecher* were factually dissimilar. The defendant in *Mincey* had been shot only a few hours before the

interrogation and, at the time of the interrogation, the defendant was in the intensive care unit. *Mincey*, 437 U.S. at 398. During the interrogation, the defendant complained of unbearable pain in his leg. *Id.* The defendant was unable to speak and his written answers were not entirely coherent. *Id.* at 398-99. Moreover, the defendant explained several times that he was confused or unable to think clearly and the interrogation ceased only during intervals when the defendant lost consciousness or received medical treatment. *Id.* at 400-01. Based on the totality of the circumstances, the Supreme Court held that the defendant's will was overborne and, thus, his statement was involuntary. *Id.* at 401-02. Here, unlike the defendant in *Mincey*, McNary was awake and lucid, never stated that he was confused or unable to think clearly, did not appear confused or shocked, appeared to understand the questions asked, and never complained of pain.

The defendant in *Beecher*, accused of raping a woman, was shot in his leg by police officers. *Beecher*, 408 U.S. at 234-36. Shortly after the police shot defendant, he was surrounded by an angry mob, the police officers were holding a gun to his head, and the chief of police allegedly threatened to kill him. *Id.* The police interrogated the defendant only one hour after the gunshot had blown out most of the bone in the defendant's leg, while he was in extreme pain, and after a doctor gave the defendant two large injections of morphine. *Id.* at 236. The Supreme Court found that the stream of events were grossly coercive and rendered the defendant's oral confession involuntary. *Id.* Here, unlike the defendant in *Beecher*, McNary was not threatened by police and

did not complain of any pain while speaking to Detective Ptak approximately six hours after the accident. Moreover, McNary's injuries, a broken arm and a damaged knee, were not as serious as the *Beecher* defendant's injury, a gunshot wound which had blown out most of his leg. Because *Mincey* and *Beecher* are factually dissimilar from McNary's case, the state court did not reach a conclusion different from indistinguishable Supreme Court cases.

### III. Ineffective Assistance of Appellate Counsel

McNary claims that he received ineffective assistance of appellate counsel because his appellate counsel failed to raise the following issues on his direct appeal: (1) the trial court improperly refused to instruct the jury on voluntary intoxication; and (2) insufficient evidence existed to support the jury's verdict of first degree murder.

As discussed above, to prevail on a claim for ineffective assistance of counsel, the petitioner must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness under the circumstances and (2) the deficient performance resulted in prejudice. *Strickland*, 466 U.S. at 690, 694. The court is highly deferential to counsel's judgments, *id.* at 689-91, and the failure to raise a meritless argument does not constitute ineffective assistance of counsel, *Stone*, 86 F.3d at 717.

First, McNary contends that his appellate counsel rendered ineffective assistance because he did not appeal the trial court's refusal to instruct the jury on voluntary intoxication. Under Illinois law, a trial court has "discretion to refuse to tender a

defense instruction on intoxication where there is insufficient evidence for a jury to reasonably find that the defendant was so intoxicated at the time of the crime that he lacked the requisite mental state for the crime." *People v. Waldron*, 580 N.E.2d 549, 566 (Ill. App. Ct. 1991) (holding instruction unwarranted when evidence indicated the defendant was in control of his actions despite the ingestion of alcohol and drugs). Evidence that a defendant had been drinking, alone, is insufficient to suggest that defendant was so intoxicated as to negate the requisite mental state for murder and, thus, to warrant an intoxication instruction. *Id.*

The state appellate court, applying *Strickland*, held that the appellate counsel was not ineffective for deciding not to appeal the meritless jury instruction issue. The state court explained that McNary was not entitled to an intoxication instruction because McNary's own statements established his ability to act knowingly and intentionally. For instance, McNary told police that he saw the pedestrian, honked his horn, and kept driving. McNary also lied to the police by minimizing the amount of alcohol he had consumed. Further, McNary testified that, at the time he got in his car to drive, "I was feeling high, but I was feeling though that I can drive." The state court concluded that these statements undermined McNary's position that he was so intoxicated that he was unable to act knowingly and intentionally while committing the crimes. This conclusion was not unreasonable. Thus, the state court did not unreasonably apply

*Strickland* by holding that the appellate counsel's decision not to appeal the jury instruction issue was neither objectively unreasonable nor prejudicial.

Second, McNary contends his appellate counsel was ineffective because counsel failed to argue on appeal that insufficient evidence existed to support the jury's verdicts of first degree murder. Due process requires the state to establish beyond a reasonable doubt that a defendant committed each element of the charged offense. *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003). When the defendant challenges the sufficiency of the evidence to support a criminal conviction, the court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under Illinois law, to sustain a conviction for knowing first degree murder, the state must prove that the defendant was consciously aware that his conduct created a strong probability of death or great bodily harm. *People v. Alsup*, 373 869 N.E.2d 157, 165 (Ill. App. Ct. 2007). The state need not prove that the defendant had the specific intent to kill or do great bodily harm or that he knew with certainty that someone would die as a result of his conduct. *Id.* (explaining that a defendant can be convicted of first degree murder even if the death was caused unintentionally). Several defendants have been convicted of first degree murder under Illinois law for the unintentional killing of a victim. *See, e.g., Alsup*, 869 N.E.2d at 163 (affirming first degree murder conviction of defendant who

killed unwary motorist while leading police on a high-speed chase and deliberately forcing oncoming vehicles off of the road); *People v. Stevens*, 757 N.E.2d 1281, 1289-90 (Ill. App. Ct. 2001) (affirming denial of motion to withdraw guilty plea to first degree murder where defendant drove a stolen car at speeds in excess of 100 miles an hour, weaved through traffic, refused to stop for marked police units, and drove into the rear of the victim's vehicle).

The state appellate court, applying *Strickland*, held that the appellate counsel was not deficient for failing to raise the meritless argument that insufficient evidence supported the jury's first degree murder convictions. The state court held that sufficient evidence supported the jury's verdicts because a rational jury could find beyond a reasonable doubt that McNary knew his conduct created a strong probability of death or great bodily harm. McNary drove at a high rate of speed when he struck and killed a pedestrian. After killing the pedestrian and while the police were pursuing McNary, he continued to drive at an estimated speed of 80 to 90 miles per hour, passed cars by driving into the lane of incoming traffic, and ran several red lights until he collided with another vehicle, killing its two occupants. Based on these facts, the state court found that sufficient evidence supported the jury's verdicts. Because sufficient evidence existed, the state court concluded that the appellate counsel was not deficient for failing to raise the meritless argument that insufficient evidence supported the first degree murder convictions. McNary fails to satisfy the standard for habeas relief and

demonstrate that the state court's application of *Strickland* was objectively unreasonable or that the court's decision was based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this Court denies McNary habeas relief on the ground that appellate counsel was ineffective.

## IV. Eighth Amendment Claim

McNary argues that the natural life sentence statute, as applied, violates the Eighth Amendment's prohibition against excessive and unusual punishment.[4] Hardy argues that McNary's Eighth Amendment claim is procedurally defaulted. A petitioner procedurally defaults on a claim unless he articulates both the operative facts and the controlling legal principles on which his claim is based. *Perruquet*, 390 F.3d at 519 (finding petitioner procedurally defaulted due process claim where he cited only state court cases in his state court briefs and failed to mention due process). Here, McNary previously asserted in state court that the natural life sentence statute, as applied, violates the Illinois Constitution, not the Eighth Amendment. Because McNary did not rely on the Eighth Amendment in state court, McNary's Eighth Amendment claim is procedurally defaulted.

---

[4] While McNary also argues that his trial and appellate counsel were ineffective for failing to argue that the natural life sentence statute, as applied, was unconstitutional, McNary procedurally defaulted this claim because he raised it for the first time in his habeas petition. *Perruquet*, 390 F.3d at 514.

Even if this Court considered McNary's procedurally defaulted claim on the merits, McNary fails to cite any Supreme Court case demonstrating clearly established federal law that a state statute mandating life imprisonment for the unintentional killing of two victims violates the Eighth Amendment. *See* 28 U.S.C. § 2254(d)(1) (requiring petitioner to demonstrate that the state court decision was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court). Further, as Hardy points out, the Eighth Amendment permits life imprisonment for a single drug crime. *Harmelin v. Michigan*, 501 U.S. 957, 996 (1991) (upholding a sentence of mandatory life imprisonment for the possession of more than 650 grams of cocaine by a defendant who had no prior felony convictions). Given the Supreme Court's decision in *Harmelin*, it is logical to conclude that the Eighth Amendment also permits life imprisonment for the killing of two individuals while drinking and driving. Moreover, the Illinois legislature has decided that the commission of first degree murder of more than one victim warrants a mandatory sentence of life imprisonment, 730 Ill. Comp. Stat. 5/5-8-1(c)(2), and this Court cannot second-guess the legislature's policy choices. *See Ewing v. California*, 538 U.S. 11, 28 (2003) (stating that the Court does "not sit as a 'superlegislature" to second-guess" policy choices). Accordingly, this Court denies McNary's claim that the natural life sentence statute, as applied, violates the Constitution.

## CONCLUSION

For the foregoing reasons, this Court denies McNary's petition for a writ of habeas corpus.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:  June 9, 2011