UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. DISHON McNARY, | ) ) ) | |
| Petitioner, | ) ) | |
| vs. | ) ) | 10 C 5185 |
| MARCUS HARDY, Warden, Stateville Correctional Center, | ) ) ) | |
| Respondent. | ) ) | |

# MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This case comes before the Court on the motion of Petitioner Dishon McNary ("McNary") for a certificate of appealability and to proceed *in forma pauperis*, without prepayment of fees. For the reasons stated below, the motion for a certificate of appealability is granted in part and denied in part and the motion to proceed *in forma pauperis* is granted.

## BACKGROUND

During the early morning hours of March 21, 1998, McNary was driving under the influence of alcohol when he hit and killed a pedestrian and two individuals in another motor vehicle. At approximately 1:50 a.m., Chicago Police Officer Jose Martinez ("Officer Martinez") saw McNary strike and kill the pedestrian and then

subsequently strike another motor vehicle killing two other individuals. Chicago Police Officer Donald Branch also witnessed McNary's car crashing into the other motor vehicle. Shortly after the car accident, Chicago Police Officer Richard Hardesty ("Officer Hardesty") arrived at the scene and observed that McNary was semi-conscious and his breath smelled of alcohol. McNary was transported to Cook County Hospital by an ambulance.

At approximately 3:50 a.m., Officer Hardesty arrived at Cook County Hospital. A doctor in the emergency room gave Officer Hardesty permission to speak with McNary. Officer Hardesty observed that McNary was awake and lucid and lying on a gurney with an I.V. in his arm. Officer Hardesty introduced himself to McNary and informed McNary that he was investigating the accident. Officer Hardesty asked McNary if he had been drinking and McNary, minimizing the amount of alcohol consumed, said he had two beers and two shots. When questioned about how the accident occurred, McNary stated "I seen the man standing in the middle of the street, I beeped my horn, he did not move, I kept on going." Officer Hardesty placed McNary under arrest for driving under the influence of alcohol and read him the "Warning to Motorist" form. McNary was then administered blood and urine alcohol tests. McNary's blood alcohol level was .22 grams per deciliter.

On March 21, 1998 at approximately 8:00 a.m., Detective Theodore Ptak ("Detective Ptak") went to Cook County Hospital and received permission from the attending physician to speak with McNary. Detective Ptak advised McNary of his Miranda rights. According to Detective Ptak, McNary appeared to understand the questions asked, did not appear shocked or confused, and did not complain of any pain. Among other things, McNary told Detective Ptak that he struck a pedestrian but did not stop because he knew he was drunk.

McNary was charged with aggravated reckless homicide and first degree murder in the Circuit Court of Cook County, Illinois. At trial, McNary testified that he had been drinking since approximately 1:00 p.m. the day before the accident. When asked whether he felt drunk, McNary testified "I was feeling high, but I was feeling though that I can drive." McNary acknowledged that he hit something while driving, but stated that he kept driving because he did not know what he hit. McNary testified that a suspicious car was following him, so that he ran several red lights when he collided with the other motor vehicle. McNary stated he did not remember anything after the accident until he woke up in the hospital handcuffed to the bed.

At the jury instruction conference, McNary's counsel proposed a jury instruction on voluntary intoxication. The trial court found that McNary's intoxication did not deprive him of all reason and, therefore, the jury instruction on voluntary intoxication

was not warranted. The trial court instructed the jury on aggravated reckless homicide as to all three victims and on first degree murder as to the two victims in the motor vehicle.

On May 27, 1999, a jury found McNary guilty of two counts of first degree murder and one count of aggravated reckless homicide. McNary was sentenced to a mandatory term of natural life for the two murder convictions and a concurrent ten-year sentence for the aggravated reckless homicide conviction. On September 28, 2001, the state appellate court affirmed. On May 1, 2002, the state supreme court denied McNary's petition for leave to appeal. On May 23, 2002, McNary filed a post-conviction petition in the Circuit Court of Cook County. On August 9, 2002, the trial court summarily dismissed the post-conviction petition, finding it frivolous, patently without merit, and untimely. Because McNary's petition was timely, the state appellate court reversed and remanded. On remand, McNary filed a supplemental post-conviction petition and, on October 31, 2006, the trial court granted the State's motion to dismiss both the original and supplemental post-conviction petitions. On December 23, 2009, the state appellate court affirmed and, on May 26, 2010, the state supreme court denied McNary's petition for leave to appeal.

On March 11, 2011, McNary filed an amended petition for a writ of habeas corpus and Marcus Hardy ("Hardy"), the Warden at Stateville Correctional Center,

subsequently responded to McNary's petition. On June 9, 2011, this Court denied McNary's habeas petition. *United States ex rel. McNary v. Hardy*, No. 10 C 5185, 2011 WL 2415030 (N.D. Ill. June 9, 2011). McNary now moves for a certificate of appealability.

**LEGAL STANDARD**

A district court may entertain an application for a writ of habeas corpus on behalf of a state prisoner who is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A court may award habeas relief if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established federal law if it applies a rule that contradicts the governing law or reaches a result different from a Supreme Court case with materially indistinguishable facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). The state court decision constitutes an unreasonable application of clearly established federal law if the state court applied the governing law in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. 685, 699 (2002) (explaining that "it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied [the governing law]

incorrectly"). In evaluating a habeas petition, the court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner, however, can rebut the presumption with clear and convincing evidence. *Id.*

A district court may issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). Where a district court has rejected the constitutional claims on the merits, the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## DISCUSSION

McNary seeks a certificate of appealability for all of the claims raised in his habeas petition, including: (1) ineffective assistance of trial counsel; (2) the voluntariness of his statements to Detective Ptak; (3) ineffective assistance of appellate counsel; and (4) the constitutionality of the natural life sentencing statute.

### I. Ineffective Assistance of Trial Counsel

In his habeas petition, McNary claimed that his trial counsel rendered ineffective assistance because he failed to present evidence at a suppression hearing demonstrating that McNary's incriminating statements to Officer Hardesty were inadmissible. According to McNary, trial counsel failed to present three witnesses, including McNary,

McNary's sister, and Officer Martinez, who would have demonstrated that McNary was in custody and not given Miranda warnings when questioned by Officer Hardesty.

McNary concedes that the state court applied the correct governing law to his claim for ineffective assistance as set forth in *Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984). In light of the deference given to counsel by *Strickland* and the deference given to state court decisions by the habeas statute, McNary has little room to argue that he is entitled to habeas relief for his trial counsel's ineffective assistance. However, reasonable jurists could debate whether the state court applied *Strickland* in an objectively unreasonable manner when it found that McNary's trial counsel was not ineffective for failing to present evidence that McNary's statements were inadmissible. On the one hand, McNary's potentially inadmissible statement, that he saw the pedestrian, blew his horn, and kept on driving, may have played a significant role in the jury's decision to convict McNary of first degree murder. McNary's statement was relevant to the first degree murder convictions to prove that McNary was consciously aware that his conduct created a strong probability of death or great bodily harm since he had just killed a pedestrian and continued driving at high speeds. On the other hand, McNary also later admitted to Detective Ptak that he knew he hit a pedestrian but did not stop because he was drunk. Without the benefit of the statements made to Officer Hardesty, the jury may not have convicted McNary of first degree murder.

Accordingly, the Court grants McNary's motion for a certificate of appealability as to the effectiveness of his trial counsel.

**II.     Voluntariness of McNary's Statement to Detective Ptak**

McNary also claimed in his habeas petition that the trial court improperly admitted an involuntary statement he made to Detective Ptak at the hospital. McNary asserts that he is entitled to a certificate of appealability because reasonable jurists could debate whether the state court reached a conclusion different from the Supreme Court in the indistinguishable cases of *Mincey v. Arizona*, 437 U.S. 385 (1978) and *Beecher v. Alabama*, 408 U.S. 234 (1972).

The state court considered McNary's physical injuries and the fact that he had received pain medication and concluded, based on the totality of the circumstances, that McNary's statement was voluntary. Because we found that *Mincey* and *Beecher* are factually dissimilar from McNary's case, we held that the state court did not reach a conclusion different from indistinguishable Supreme Court cases. *McNary*, 2011 WL 2415030, at *4-5. Because reasonable jurists could not debate this issue, the Court denies McNary's motion for a certificate of appealability as to the voluntariness of his statements to Detective Ptak.

**III.    Ineffective Assistance of Appellate Counsel**

McNary further claimed in his habeas petition that his appellate counsel rendered ineffective assistance for failing to raise two issues on appeal. McNary again

acknowledged that the state court applied the correct governing law, as set forth in *Strickland*, to his ineffective assistance of counsel claim. As noted above, in light of the deference given to counsel by *Strickland* and the deference given to state court decisions by the habeas statute, McNary has little room to argue that he is entitled to habeas relief for his appellate counsel's ineffective assistance.

McNary first contends that his appellate counsel rendered ineffective assistance because he did not appeal the trial court's refusal to instruct the jury on voluntary intoxication. The trial court was obligated to instruct the jury on voluntary intoxication instruction if "[v]ery slight evidence" existed to support the theory. *People v. Hari*, 843 N.E.2d 349, 361 (Ill. 2006) (finding that the court need not instruct the jury regarding an affirmative defense where the evidence is so clear and convincing that the court finds as a matter of law that the defendant has no defense); *People v. Reece*, 591 N.E.2d 993, 996 (Ill. App. Ct. 1992) ("only slight evidence is necessary to raise a [voluntary intoxication] defense and justify the giving of a jury instruction on the issue even if the facts upon which the defense is based are inconsistent with a defendant's own testimony, for a defendant is entitled to the benefit of any defense shown by the evidence"). However, voluntary intoxication is not an available defense where the "defendant acted with any purpose or rationality or remembered the offense with clarity or detail." *People v. Thompson*, 466 N.E.2d 380, 389 (Ill. App. Ct. 1984) (citation

omitted). The state court's decision to exclude the instruction on voluntary intoxication was based on McNary's statements after the accident that he saw the pedestrian, honked his horn, and kept driving and his testimony at trial that he was "feeling high" but thought he could drive. McNary's appellate counsel did not appeal the trial court's refusal to instruct the jury on voluntary intoxication, even though Officer Hardesty observed that McNary was semi-conscious and his breath smelled of alcohol immediately after the accident and McNary had a blood alcohol level of .22 approximately two hours after the accident. Based on the record, we conclude that reasonable jurists could debate whether the state court applied *Strickland* in an objectively unreasonable manner.

McNary also contends that his appellate counsel was ineffective for failing to argue on appeal that insufficient evidence existed to support the jury's verdicts of first degree murder. For the reasons stated in this Court's June 9, 2011 Memorandum Opinion, reasonable jurists could not debate the validity and reasonableness of the state court's decision. *McNary*, 2011 WL 2415030, at *6-7.

Accordingly, this Court grants McNary a certificate of appealability concerning his claim for ineffective assistance of appellate counsel, but limits his right to appeal to counsel's failure to appeal the state court's decision on the voluntary intoxication jury instruction.

## IV. Eighth Amendment Claim

Finally, McNary argued in his habeas petition that the natural life sentence statute, as applied, violates the Eighth Amendment's prohibition against excessive and unusual punishment. McNary also argued that his trial and appellate counsel were ineffective for failing to make this argument. For the reasons stated in our June 9, 2011 Memorandum Opinion, McNary procedurally defaulted these claims. *McNary*, 2011 WL 2415030, at *7.

When a district court denies a habeas petition on procedural grounds, the petitioner must satisfy two threshold inquiries and show that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the district court's procedural ruling was correct. *Slack*, 529 U.S. at 484. Where a district court disposes of a case pursuant to a plain procedural bar, a reasonable jurist cannot conclude that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. *Slack*, 529 U.S. at 484. Here, the Court disposed of McNary's Eighth Amendment claim, and related Sixth Amendment claims, based on the procedural default rule. Accordingly, a reasonable jurist cannot debate this Court's ruling and McNary's request for a certificate of appealability is denied.

## V. Motion to Proceed *In Forma Pauperis*

A prisoner seeking to appeal a judgment in a civil action may proceed *in forma pauperis* if he is unable to pay the fee. 28 U.S.C. § 1915(a). While the prisoner must pay the full filing fee, the court will assess and, when funds exist, collect, an initial partial filing fee of twenty percent of the average monthly deposits to the prisoner's account for the six-month period immediately preceding the filing of the appeal. 28 U.S.C. § 1915(b). After payment of the initial fee, the prisoner must make monthly payments of twenty (20) percent of the preceding month's income credited to the prisoner's account. *Id.* The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fee is paid. *Id.*

Accordingly, McNary must pay an initial partial filing fee in the amount of $36.22[1] and the Court directs the Stateville Correctional Center to forward monthly payments equal to twenty (20) percent of the preceding month's income to the Clerk each time the amount in McNary's account exceeds $10 until the filing fee is paid in full. All payments must be sent to the Clerk, United States District Court,

---

[1] The average monthly deposits to McNary's account are as follows: $86.40 (December 2010); $445.64 (January 2011); $83.52 (February 2011); $66.24 (March 2011); $236.40 (April 2011); and $168.52 (May 2011). The total deposits for the six months preceding McNary's notice of appeal equals $1086.72 and, thus, the average monthly deposit equals $181.12. Twenty percent of $181.12 (the average monthly deposit) equals McNary's initial partial filing fee of $36.22.

219 S. Dearborn, Chicago, Illinois 60604, attn: Cashier's Desk, 20th floor, and clearly identify McNary's name and case number.

## CONCLUSION

For the foregoing reasons, this Court grants in part and denies in part McNary's motion for a certificate of appealability. Specifically, this Court grants McNary a certificate of appealability regarding whether the state court's decision was contrary to, or constituted an unreasonable application of, clearly established Federal law when the state court held that: (1) McNary's trial counsel was not ineffective for failing to prove that McNary was in custody at the time he made incriminating statements to Officer Hardesty; and (2) McNary's appellate counsel was not ineffective for failing to appeal the trial court's decision to exclude the jury instruction on voluntary intoxication. Further, the Court grants McNary's motion to proceed *in forma pauperis* and orders the Stateville Correctional Center to forward from McNary's account the initial partial filing fee of $36.22 and make monthly payments of twenty (20) percent of the preceding month's income until the filing fee is paid in full.

                                                    */s/ Charles P. Kocoras*
                                                    Charles P. Kocoras
                                                    United States District Judge

Dated:   August 1, 2011